NOTICE

*The text of this opinion can be corrected before the opinion is published in the Pacific Reporter. Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| SHELBY M. TARBOX,<br><br>               Appellant,<br><br>        v.<br><br>STATE OF ALASKA,<br><br>               Appellee. | Court of Appeals No. A-14509<br>Trial Court No. 3AN-23-06497 CR<br><br>**O P I N I O N**<br><br>No. 2815 — September 19, 2025 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Andrew Peterson, Judge.

Appearances: Darryl L. Thompson, Darryl L. Thompson, P.C., Anchorage, for the Appellant. Andalyn Pace, Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Wollenberg and Harbison, Judges.

Judge WOLLENBERG.

Alaska Statute 12.55.027 governs the award of credit against a term of imprisonment for time spent in a court-ordered treatment program or on electronic monitoring. As a general matter, subsections (a)-(c), (f), (i), and (l) set out the substantive requirements and limitations on receiving credit for time spent in a

treatment program, and subsections (d), (g), and (i) set out the requirements and restrictions on receiving credit for time spent on electronic monitoring.

In 2019, the Alaska Legislature amended AS 12.55.027(g) to prohibit a court from granting credit against a term of imprisonment for time spent on electronic monitoring for certain listed crimes, including felony crimes against a person.[1] In that same subsection, however, the legislature made clear that a person in this situation — *i.e.*, a person who served time on electronic monitoring for one of the precluded offenses — is still eligible to receive credit against that sentence if "the defendant participated in a residential treatment program under (c) and (f) of this section while under electronic monitoring."

In 2024, Shelby M. Tarbox pleaded guilty to second-degree assault, a felony crime against a person.[2] Prior to her sentencing, Tarbox spent more than nine months on electronic monitoring, approximately one month of which was spent in a residential treatment program. Tarbox requested credit against her sentence for the entire period she was on electronic monitoring, arguing that under AS 12.55.027(g), she was entitled to credit for the entire period because she spent a portion of that time in a residential treatment program.

The superior court initially granted Tarbox's request for credit against her sentence for the entire period she was on electronic monitoring, but subsequently vacated the credit after concluding that the legislative history of AS 12.55.027(g) clearly demonstrated that Tarbox was only entitled to credit for the time she spent in a residential treatment program. The question presented in this appeal is whether, under AS 12.55.027(g), Tarbox was entitled to credit for the entire time period she was on

---

[1] SLA 2019, ch. 11, § 6 (amending AS 12.55.027(g)).

[2] AS 11.41.210(a)(2). Tarbox also pleaded guilty to misdemeanor driving under the influence and received a sentence that ran entirely concurrently to her sentence on the second-degree assault conviction.

electronic monitoring because she participated in a residential treatment program for a portion of that time, or whether she was only entitled to credit for the time she spent in residential treatment.

For the reasons we explain in this opinion, we agree with the superior court that Tarbox was not entitled to credit against her sentence for second-degree assault for the time she spent on pretrial electronic monitoring outside of residential treatment. We therefore affirm the superior court's order.

*Underlying facts and proceedings*

In August 2023, Shelby M. Tarbox was charged with first-degree assault, driving under the influence, and reckless driving.[3] In September, the superior court issued a bail order releasing Tarbox subject to electronic monitoring and house arrest. The court also ordered Tarbox to attend residential treatment at Sundown M Ranch.

On September 25, 2023, Tarbox was placed on house arrest with electronic monitoring. Starting on September 27, Tarbox was in residential treatment at Sundown M Ranch. Tarbox remained in residential treatment until October 25, 2023. Tarbox then returned to house arrest on electronic monitoring.

In March 2024, Tarbox pleaded guilty, pursuant to a plea agreement, to second-degree assault and driving under the influence.[4] Under the plea agreement, Tarbox received a sentence of 5 years with 3 years suspended on the second-degree assault conviction and an entirely concurrent sentence of 1 year on the driving under the influence conviction (for a composite sentence of 5 years with 3 years suspended). The State dismissed the reckless driving charge. Sentencing was scheduled for July 2024.

---

[3] AS 11.41.200(a)(1), AS 28.35.030(a)(2), and AS 28.35.400, respectively.

[4] AS 11.41.210(a)(2) and AS 28.35.030(a)(2), respectively.

Prior to sentencing, Tarbox filed an unopposed motion for sentencing credit under AS 12.55.027. Tarbox noted that AS 12.55.027(d) authorizes a court to grant credit against a sentence of imprisonment for time spent on electronic monitoring, provided the electronic monitoring meets certain conditions.[5] Under AS 12.55.027(g), however, electronic monitoring credit is prohibited for certain crimes, including "a felony crime against a person under AS 11.41."[6] Tarbox pleaded guilty to second-

---

[5]    In full, AS 12.55.027(d) provides:

(d) A court may grant credit against a sentence of imprisonment for time spent under electronic monitoring if the person has not committed a criminal offense while under electronic monitoring and the court imposes restrictions on the person's freedom of movement and behavior while under the electronic monitoring program, including requiring the person to be confined to a residence except for a
(1) court appearance;
(2) meeting with counsel; or
(3) period during which the person is at a location ordered by the court for the purposes of employment, attending educational or vocational training, performing community volunteer work, or attending a rehabilitative activity or medical appointment.

[6]    AS 12.55.027(g)(1). In full, subsection (g) provides:

(g) Unless the defendant participated in a residential treatment program under (c) and (f) of this section while under electronic monitoring, a court may not grant credit against a sentence of imprisonment under (d) of this section if the sentence is for
(1) a felony crime against a person under AS 11.41;
(2) a crime involving domestic violence as defined in AS 18.66.990;
(3) an offense under AS 11.71 involving the delivery of a controlled substance to a person under 19 years of age;
(4) burglary in the first degree under AS 11.46.300; or
(5) arson in the first degree under AS 11.46.400.

– 4 –                                              2815

degree assault, which is such a crime under AS 11.41.[7]

In her motion, Tarbox acknowledged that normally she would not be entitled to credit against her second-degree assault sentence for the time she spent on electronic monitoring because second-degree assault is a felony crime against a person.[8] She argued, however, that the first clause of subsection (g) — "[u]nless the defendant participated in a residential treatment program under (c) and (f) of this section while under electronic monitoring" — meant that if she spent *any* time in a residential treatment program, then the entire duration of her pretrial electronic monitoring became eligible for credit against her sentence under AS 12.55.027(d).

Thus, Tarbox requested credit against her sentence of imprisonment for the entire period she was on electronic monitoring from September 25, 2023 through July 15, 2024 (nearly ten months), even though she only spent 28 days in a residential treatment program. The superior court granted this unopposed motion for credit.

In August, the Alaska Department of Corrections (DOC) filed a motion to intervene, arguing that the legislative history of AS 12.55.027(g) made clear that Tarbox was only entitled to credit against her sentence for the time she spent in residential treatment — not the entire period she was on electronic monitoring — and therefore the court was required to vacate Tarbox's illegal sentence. The superior court ultimately agreed that the sentence was illegal and issued an order vacating the electronic

---

[7]    AS 11.41.210(a)(2).

[8]    This same restriction did not apply to Tarbox's sentence for driving under the influence, since driving under the influence is not one of the excluded crimes in AS 12.55.027(g). As a practical matter, however, Tarbox's sentence for driving under the influence ran entirely concurrently to her sentence for second-degree assault. Therefore, if she was not eligible for credit against her sentence for second-degree assault for the time she spent on electronic monitoring outside of residential treatment, then she could not receive any credit against her composite term of imprisonment except in relation to her time in residential treatment.

monitoring credit it had previously granted.[9] The court also ordered a hearing to determine how much time, if any, Tarbox spent in a qualifying treatment program.[10]

Tarbox subsequently filed an unopposed motion for credit for the 28 days she had spent in the residential treatment program at Sundown M Ranch. The superior court granted this motion, ordering that Tarbox be given credit against her composite sentence of imprisonment for the time she spent in residential treatment from September 27 to October 25, 2023.

Tarbox now appeals, arguing that the superior court misinterpreted AS 12.55.027(g) in denying her credit against her sentence of imprisonment for the time she spent on electronic monitoring before and after her time in residential treatment.[11]

---

[9] Tarbox opposed DOC's motion to intervene, arguing that DOC did not have standing to intervene in her criminal case. Tarbox raises this argument again on appeal. We need not reach this issue, however, because Tarbox's sentence was illegal, and an illegal sentence can be corrected at any time. Alaska R. Crim. P. 35(a). Thus, once Tarbox's illegal sentence was brought to the superior court's attention, the court acted appropriately in correcting the sentence under Alaska Criminal Rule 35(a). Regardless, even assuming we were to decide this issue in Tarbox's favor, she would not be entitled to the relief she is seeking: an order granting her credit for all the time she was under electronic monitoring, rather than an order limiting credit to her time in a residential treatment program.

[10] *See* AS 12.55.027(b); *see also* AS 12.55.027(c) (listing factors "a court shall consider" in "granting credit toward a sentence of imprisonment for time spent in a treatment program"); AS 12.55.027(f) (listing requirements a treatment program must meet to qualify under the section). The court also noted that if credit for time spent on electronic monitoring had been part of the plea agreement, it would entertain a request by Tarbox to withdraw her plea.

[11] The parties do not dispute that Tarbox spent 28 days in a qualifying treatment program and was entitled to credit against her sentence of imprisonment for that time.

*Alaska Statute 12.55.027(g) prohibits credit for time spent on electronic monitoring for certain crimes, including felony crimes against a person, while allowing credit for time spent in a qualifying treatment program*

Tarbox's appeal presents a question of statutory interpretation. We review questions of statutory interpretation *de novo*, applying our independent judgment.[12] Under our sliding-scale approach to statutory interpretation, "the plainer the language of the statute, the more convincing contrary legislative history must be."[13] "We give statutory language a reasonable or common sense construction, consonant with the objectives of the legislature."[14]

Alaska Statute 12.55.027 sets out the circumstances under which a defendant is entitled to credit against their sentence of imprisonment for time spent in a court-ordered treatment program or on electronic monitoring.[15] Subsection (g) prohibits credit for time spent on electronic monitoring for certain offenses. In particular, this provision states: "Unless the defendant participated in a residential treatment program under (c) and (f) of this section while under electronic monitoring, a court may not grant credit against a sentence of imprisonment under (d) of this section if the sentence is for" certain offenses, including "a felony crime against a person under

---

[12] *Alaska Trappers Ass'n, Inc. v. City of Valdez*, 548 P.3d 332, 336 (Alaska 2024).

[13] *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1258 (Alaska 2005) (quoting *Alaskans For Efficient Gov't Inc. v. Knowles*, 91 P.3d 273, 275 (Alaska 2004)).

[14] *City of Kenai v. Cook Inlet Nat. Gas Storage Alaska, LLC*, 373 P.3d 473, 480 (Alaska 2016) (internal quotations marks omitted).

[15] *See Kelila v. State*, 556 P.3d 284, 286-87 (Alaska App. 2024); *see also Medina v. State*, 418 P.3d 861, 866 (Alaska App. 2018) (noting that AS 12.55.027 "sets out criteria for determining whether a defendant's time in treatment qualifies for jail credit").

AS 11.41."[16] At issue in this appeal is the meaning of the "unless" clause in this provision.

Alaska Statute 12.55.027 was first enacted in 2007, and it has been subject to a series of legislative amendments since then.[17] Pertinent to the question of statutory interpretation in this appeal, in 2015, the legislature amended AS 12.55.027 to authorize credit for time spent on electronic monitoring under certain circumstances.[18] The following year, the legislature expanded eligibility for credit for time spent in a treatment program, but imposed additional restrictions on credit for time spent on electronic monitoring. In particular, the legislature enacted subsection (g), which limited the amount of electronic monitoring credit a defendant could receive against a term of imprisonment for certain crimes to 360 days.[19] And in 2019, the legislature amended AS 12.55.027(g) to its current form, prohibiting any credit for time spent on electronic monitoring against a sentence imposed for the listed crimes, including a felony crime against a person, "[u]nless the defendant participated in a residential treatment program."[20]

Tarbox acknowledges that she was convicted of a felony crime against a person and that defendants typically are not entitled to credit against a sentence for such a crime for time spent on electronic monitoring. She nonetheless contends that because the "unless" clause applies to her — *i.e.*, because she spent *some* time in a qualifying residential treatment program, and she was on electronic monitoring during that time

---

[16] AS 12.55.027(g)(1).

[17] SLA 2007, ch. 24, § 20; *Kelila*, 556 P.3d at 287.

[18] SLA 2015, ch. 20, § 2.

[19] SLA 2016, ch. 36, § 71.

[20] SLA 2019, ch. 11, § 6.

— the plain language of AS 12.55.027(g) is clear that she is entitled to credit for *all* of the time she spent on electronic monitoring.[21]

The State argues that the plain language is ambiguous because it could be read more narrowly to mean that a person in Tarbox's situation may be granted credit against their sentence only for time spent on electronic monitoring while in a residential treatment program. In other words, according to the State, the "unless" language is meant to clarify that defendants in Tarbox's situation may receive credit for time in treatment, *even though* they are not otherwise eligible for credit for time spent on electronic monitoring. The State further notes that the legislative history from 2019 resolves any ambiguity in AS 12.55.027(g) in favor of this interpretation.

We agree with the State that, although the plain text could be viewed as ambiguous, the legislative history convincingly demonstrates that the legislative intent in amending AS 12.55.027(g) was to ensure that defendants who were sentenced for one of the listed crimes and participated in a treatment program while on electronic monitoring were still eligible to receive credit against a sentence for an otherwise excluded crime for any time spent in treatment. But, as to sentences for the crimes listed

---

[21] Tarbox's analysis relies on a highly generalized discussion of the 2007 legislative history underlying the initial enactment of AS 12.55.027. SLA 2007, ch. 24, § 20 (amending AS 12.55 to add new section AS 12.55.027). We note that as initially enacted, AS 12.55.027(d) provided, "A court may not grant credit against a sentence of imprisonment for time spent in a private residence or under electronic monitoring." *Id.* Tarbox refers in passing to the fact that the "statute was subsequently amended in 2013, 2014, 2015, 2016, 2017, and 2019," but does not explain how any of these amendments to AS 12.55.027 support her proposed interpretation of AS 12.55.027(g). SLA 2013, ch. 43, § 19; SLA 2014, ch. 83, § 23; SLA 2015, ch. 20, §§ 1-3; SLA 2016, ch. 36, §§ 68-71; FSSLA 2017, ch. 1, § 29; SLA 2019, ch. 11, §§ 6-7. Moreover, as we noted, subsection (g) was not added by the legislature until 2016, and was not amended to include the "unless" clause until 2019. Thus, legislative history from 2007 is inapposite to resolving the question of statutory interpretation raised in this appeal. *See* SLA 2016, ch. 36, § 71 (amending AS 12.55.027 to add subsection (g)); SLA 2019, ch. 11, § 6 (amending subsection (g)).

in subsection (g), the legislature eliminated credit for time spent *solely* on electronic monitoring.[22]

The 2019 bill containing this provision, House Bill 14, did not initially include any proposed amendments to AS 12.55.027.[23] In May 2019, the amendments to AS 12.55.027(g) were introduced in the Senate Finance Committee as they were ultimately enacted.[24] In explaining the proposed changes to subsection (g) to the Senate Finance Committee, Juli Lucky, staff to Committee Co-Chair Senator Natasha von Imhof, explained that, under then-existing law, credit for time spent on electronic monitoring for certain crimes was limited (to 360 days); she stated that the proposed bill would "actually eliminate electronic monitoring credit for those serious crimes."[25] She further explained that there was "technical language" in the bill which was intended to ensure that a person "in treatment . . . would still get credit regardless of whether they are on electronic monitoring" during treatment.[26] But Lucky clarified that "for those serious crimes, there would be no electronic monitoring credit."[27]

In short, Lucky informed the committee that the "unless" clause in AS 12.55.027(g) was "technical language" that ensured an individual convicted of a listed crime could receive credit against that sentence for time spent in treatment,

---

[22]  *Kelila*, 556 P.3d at 287 (citing SLA 2019, ch. 11, § 6).

[23]  H.B. 14, 31st Legislature, 1st Session, Version A (as introduced, Feb. 20, 2019).

[24]  S.C.S. C.S.H.B. 14, 31st Legislature, 1st Session, Work Draft H at 3-4 (as introduced by the Senate Finance Committee, May 6, 2019); *see also* S.C.S. C.S.H.B. 14, Version E (as introduced by the Senate Finance Committee, May 6, 2019).

[25]  Audio of Senate Finance Committee, S.C.S. C.S.H.B. 14, testimony of Juli Lucky, at 9:04 a.m. - 9:05 a.m. (May 6, 2019).

[26]  *Id.* at 9:05 a.m. (testimony of Juli Lucky).

[27]  *Id.*

regardless of whether they were on electronic monitoring. But such individuals would not receive any credit against that sentence solely for electronic monitoring.[28]

During the same hearing, Senator Peter Micciche stated that "the one piece that was missing" from House Bill 14 prior to this version "was the electronic monitoring."[29] He confirmed that this amendment struck the "perfect mix" because the legislature "want[s] people to go into treatment" and to allow people who were convicted of a listed crime "to get credit *just* for the treatment," but "not for the electronic monitoring": "It eliminates these serious crimes from electronic monitoring credit."[30]

The legislative intent to allow credit under AS 12.55.027(g) only for time in treatment is further underscored by the discussion of the purpose of the new subsection (k). This statutory subsection provides:

> When a court grants credit toward a sentence of imprisonment under this section, if a defendant spends time in a treatment program while under electronic monitoring, the court may grant credit for either the time spent in the treatment program or for the time spent under electronic monitoring, but not for both.[31]

---

[28] This understanding was further emphasized in the Explanation of Changes prepared for the Senate Finance Committee, which provided that AS 12.55.027(g) "*prohibits* credit for [electronic monitoring (EM)] for those specified crimes but clarifies that credit can be granted when the defendant is on EM while participating in *residential* treatment." Explanation of Changes for S.C.S. C.S.H.B. 14, prepared for the Senate Finance Committee (May 6, 2019).

[29] Audio of Senate Finance Committee, S.C.S. C.S.H.B. 14, statement of Senator Peter Micciche, at 9:08 a.m. - 9:09 a.m. (May 6, 2019).

[30] *Id.*

[31] S.C.S. C.S.H.B. 14, 31st Legislature, 1st Session, Work Draft H at 4 (as introduced by the Senate Finance Committee, May 6, 2019).

Senator Lyman Hoffman asked about the intent of subsection (k).[32] Lucky clarified that the "intent of that section was to ensure that if a person was under both electronic monitoring and treatment at the same time, that they could not get double credit for that one calendar day."[33] She again noted that "electronic monitoring credit" would no longer be available for certain crimes.[34]

Senator Micciche reminded the Senate Finance Committee that for the "serious crimes" listed in subsection (g), defendants can "only get credit for the time spent in treatment" and not for electronic monitoring, so subsection (k) would not apply.[35]

This legislative history clearly resolves any ambiguity in the plain text: the legislature considered the precise question raised by this appeal and intended that defendants who were convicted of one of the crimes listed in subsection (g) be eligible for credit against a sentence for that crime only for time spent in a qualifying treatment program.

We note that adopting Tarbox's construction would mean that an individual who is convicted of one of the crimes listed in AS 12.55.027(g) would now be eligible to receive *more* credit against that sentence for time spent on electronic monitoring than under the previous version of subsection (g), which limited credit for the listed crimes to 360 days.[36] This outcome is inconsistent with the purpose of the

---

[32] Audio of Senate Finance Committee, S.C.S. C.S.H.B. 14, statement of Senator Lyman Hoffman, at 9:09 a.m. - 9:10 a.m. (May 6, 2019).

[33] *Id.* at 9:10 a.m. (testimony of Juli Lucky).

[34] *Id.* at 9:11 a.m. (testimony of Juli Lucky).

[35] *Id.* at 9:11 a.m. - 9:12 a.m. (statement of Senator Peter Micciche).

[36] *See* former AS 12.55.027(g) (pre-2019 version).

2019 amendments to AS 12.55.027(g), which was to eliminate credit against a sentence for any of the listed crimes for time spent solely on electronic monitoring.

For example, under Tarbox's reading, an individual who was convicted of a felony crime against a person who spent one month in a residential treatment program and a total of two years on pretrial electronic monitoring could seek credit for the entire two years on electronic monitoring — resulting in *more* credit for electronic monitoring than the 360 days permitted under the previous version of AS 12.55.027(g). But the legislature's intent was to prohibit, not to expand, credit for electronic monitoring against a sentence of imprisonment for the crimes listed under subsection (g), while encouraging such individuals to participate in a qualifying treatment program by allowing them to receive credit for such treatment.[37] It would therefore defeat the objectives of the legislature if we construed AS 12.55.027(g) to allow an individual subject to subsection (g) who has participated in a qualifying treatment program to claim unlimited credit against a sentence for a listed crime for time spent on electronic monitoring.

Accordingly, we hold that under AS 12.55.027(g), an individual may receive credit against their sentence of imprisonment for time spent in a qualifying treatment program, as defined in AS 12.55.027(c) and (f), regardless of whether they were on electronic monitoring during such treatment, but may not receive credit against a sentence for one of the listed crimes for time spent solely on electronic monitoring. We therefore reject Tarbox's challenges to the superior court's order denying her credit

---

[37] Because we conclude that the legislative history resolves any ambiguity in the statutory language, we reject Tarbox's argument that we should apply the rule of lenity. *See Municipality of Anchorage v. Brooks*, 397 P.3d 346, 349 (Alaska App. 2017) (recognizing that the "rule of lenity or strict construction comes into play only when, after employing normal methods of statutory construction, the legislature's intent cannot be ascertained or remains ambiguous" (quoting *De Nardo v. State*, 819 P.2d 903, 907 (Alaska App. 1991))).

against her second-degree assault sentence for time spent solely on pretrial electronic monitoring.

*Conclusion*

The order of the superior court is AFFIRMED.